# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SERENGETI ASSET MANAGEMENT LP; PORTFOLIO S AGGREGATOR II LP; PORTFOLIO S AGGREGATOR III LP; SERENGETI CARACAL MASTER FUND, LP; SERENGETI CARACAL MULTI-SERIES MASTER LLC—SERIES EC; and SERENGETI CARACAL MULTI-SERIES MASTER LLC—SERIES AL, | Case No.. **COMPLAINT** |
| Plaintiffs, | |
| -against- | |
| JOSEPH NEAL SANBERG; ASPIRATION GROWTH OPPORTUNITIES, LP; ASPIRATION GROWTH OPPORTUNITIES GP, LLC; ASPIRATION GROWTH OPPORTUNITIES II, LP; ASPIRATION GROWTH OPPORTUNITIES II GP, LLC; ASPIRATION GROWTH OPPORTUNITIES III, LP; AGO III GP, LLC; AGO SPECIAL SITUATIONS LP; and DOES 1-10, | |
| Defendants. | |

## TABLE OF CONTENTS

**Page**

NATURE OF THE ACTION ........................................................................................ 1

THE PARTIES........................................................................................................... 3

JURISDICTION AND VENUE ................................................................................. 7

FACTUAL BACKGROUND..................................................................................... 8

CLAIMS FOR RELIEF ............................................................................................. 24

    FIRST THROUGH FOURTH CLAIMS FOR RELIEF: Violations of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (17 CFR § 240.10b-5)................................ 24

    FIFTH THROUGH EIGHTH CLAIMS FOR RELIEF: Fraudulent Concealment ................. 33

    NINTH THROUGH TWELFTH CLAIMS FOR RELIEF: Fraud ........................................... 41

    THIRTEENTH THROUGH SEVENTEENTH CLAIMS FOR RELIEF: Breach of Contract.................................................................................................................. 47

    SEVENTEENTH CLAIM FOR RELIEF: Unjust Enrichment ............................................... 55

    EIGHTEENTH CLAIM FOR RELIEF: Conversion............................................................... 56

PRAYER FOR RELIEF ............................................................................................. 56

1.      Plaintiffs Serengeti Asset Management LP ("Serengeti"), Portfolio S Aggregator II LP, Portfolio S Aggregator III LP, Serengeti Caracal Master Fund, LP, Serengeti Caracal Multi-Series Master LLC—Series EC, and Serengeti Caracal Multi-Series Master LLC—Series AL (collectively, "Plaintiffs"), by and through their attorneys, Bird, Marella, Rhow, Lincenberg, Drooks & Nessim, LLP, and Elman Freiberg PLLC, submit this Complaint against Defendants Joseph Neal Sanberg, Aspiration Growth Opportunities, LP, Aspiration Growth Opportunities GP, LLC, Aspiration Growth Opportunities II, LP, Aspiration Growth Opportunities II GP, LLC, Aspiration Growth Opportunities III, LP, AGO III GP, LLC, and AGO Special Situations LP (collectively without Sanberg, "Defendant Entities," and with him, "Defendants").

## NATURE OF THE ACTION

2.      Defendant Sanberg and several entities that he controlled defrauded Plaintiffs out of more than $20 million. Plaintiffs know this because Sanberg has admitted to committing rampant fraud related to Aspiration Partners, Inc. ("Aspiration"), a purported financial institution, including fraud in exactly the type of transactions which Sanberg and his controlled entities entered into with Plaintiffs.[1] According to his own admissions and other public filings by federal agencies, including the United States Department of Justice and the Securities and Exchange Commission, Sanberg co-founded Aspiration, served on its Board of Directors, and acted as its public face. According to those same documents, Sanberg held a large equity stake in Aspiration, and forged financial documents to obtain loans that he collateralized with Aspiration stock, generated fake contracts for Aspiration that falsely inflated its revenue, and lied about

---

[1]      The Defendant Entities all have names that include the word "Aspiration" in them. But on information and belief, none had actual affiliation with Aspiration. Rather, on information and belief, these were entities created by Sanberg solely to hold his shares of Aspiration and he used the Aspiration name to create confusion and further his fraud.

Aspiration's assets to investors. Recent public reporting suggests that Aspiration was rife with fraud beyond what Sanberg has admitted to date, including potentially being used by leading business figures to route disallowed payments (disguised as investments in Aspiration) to a star athlete in the guise of an endorsement contract with Aspiration.

3.    Serengeti was founded in 2007. The firm has a strong reputation for innovation and focuses on providing investment opportunities to individuals and entities in companies and sectors where larger organizations may be unwilling to invest. Serengeti currently has over $1 billion in assets under management. Serengeti manages a number of funds and, as part of its investment strategy, some of those funds at times offer shareholders of privately held companies advances against their stock, with the stock serving as collateral. Advance agreements fill a key financial need in allowing founders and other individuals who own private stock that cannot be readily sold to realize the value of that stock in advance of any public offering or other liquidation event.[2]

4.    This case involves such agreements between Serengeti, its managed funds, Sanberg, and entities owned and/or controlled by Sanberg. Plaintiffs had no direct business dealings with Aspiration or any formally affiliated entities. Rather, based on Sanberg's material misrepresentations and omissions, and those he caused others to make, Plaintiffs entered into four advance agreements with Sanberg and the Defendant Entities. As part of those deals,

---

[2]    Generally, these agreements involve shares of private companies that appear to be moving towards going public, a process that can take many years. Holders of such shares often face substantial legal, regulatory, contractual, and practical barriers to selling their stock. To address such barriers, Serengeti and other firms like it work with founders and others holding shares in such entities to value their shares, the company that issued it, and the likely value of the shares should the company go public. Serengeti and other firms like it then may offer a loan that is collateralized by the shares, the amount of which is based on the shares' present and projected future value. Various triggering events will make the loan due, allowing the investment firm to either recoup its loan and interest thereon or take control of the shares.

Plaintiffs sent Sanberg and the Defendant Entities over $20 million believing their loans were collateralized with valuable Aspiration stock. In reality, the stock was worth far less than represented and may have been entirely worthless, its apparent value inflated because Sanberg's frauds had not yet been discovered. Sanberg got the $20 million and Plaintiffs got nothing but a claim to shares in a company that is now worth negative $181 million because of Sanberg's fraud. Plaintiffs are continuing to investigate how other frauds, including the potential fraud involving the sports figure discussed above, may have contributed to their losses.

5.      Sanberg injured Plaintiffs in several ways and the advanced funds are completely lost. First, of course, Plaintiffs entered into contracts they never would have considered had they known of any of Sanberg's frauds. Second, through his sham contracts, Sanberg artificially inflated the value of Aspiration shares, thereby fraudulently inducing Plaintiffs to enter into the relevant contracts and advance funds to Defendants. Third, Sanberg's frauds actually devalued Aspiration stock given his prominent relationship with and powerful role within the company. Indeed, once his fraud came to light, it became impossible for Aspiration to secure enough investors to continue operating, and it declared bankruptcy.

6.      On information and belief, Sanberg and the Defendant Entities that he controlled used Plaintiffs' money to enrich Sanberg personally and to facilitate Sanberg's other frauds related to Aspiration.

## THE PARTIES

7.      Plaintiff Serengeti Asset Management LP ("Serengeti") is a Delaware limited partnership with its principal place of business in New York, New York.

8.      Plaintiff Portfolio S Aggregator II LP is incorporated in Cayman Islands and has its principal place of business in New York. It is a Serengeti-managed investment fund.

9.      Plaintiff Portfolio S Aggregator III LP is incorporated in Cayman Islands and has its principal place of business in New York. It is a Serengeti-managed investment fund.

10.     Plaintiff Serengeti Caracal Master Fund, LP is incorporated in Cayman Islands and has its principal place of business in New York. It is a Serengeti-managed investment fund.

11.     Plaintiff Serengeti Caracal Multi-Series Master LLC—Series EC is incorporated in Delaware and has its principal place of business in New York. It is a Serengeti-managed investment fund.

12.     Plaintiff Serengeti Caracal Multi-Series Master LLC—Series AL is incorporated in Delaware and has its principal place of business in New York. It is a Serengeti-managed investment fund.

13.     Defendant Joseph Neal Sanberg ("Sanberg") is a co-founder and was at all relevant times a board member of the company formerly known as Aspiration, now known as CTN Holding, Inc. ("Catona"). Sanberg was at times Aspiration's largest shareholder. Sanberg is and was at all relevant times a resident of the State of California. He is currently released on bond in the matter of *United States v. Joseph Neal Sanberg,* Case No. 2:25-cr-00200(A)-SVW, pending in the Central District of California. He has entered guilty pleas to the offenses charged in that matter. His conditions of release permit him to travel within California and to New York without obtaining prior approval.

14.     Defendant Aspiration Growth Opportunities, LP ("AGO I LP") is a Delaware limited partnership. On information and belief, Sanberg controlled AGO I LP at all relevant times. Between October 2020 and October 2021, AGO I LP was a party or signatory to several stock advance deals between Plaintiffs and Defendants, and received at least $1,681,274.88 in

advance proceeds. On information and belief, Aspiration has no interest in or control over AGO I LP.

15.    Defendant Aspiration Growth Opportunities GP, LLC ("AGO I GP") is a Delaware limited liability company. AGO I GP is and was at all relevant times the General Partner of Defendant AGO I LP and oversaw the running of AGO I LP. On information and belief, Sanberg controlled AGO I GP at all relevant times. Between October 2020 and October 2021, AGO I GP was a party or signatory to several stock advance deals between Plaintiffs and Defendants. On information and belief, Aspiration has no interest in or control over AGO I GP.

16.    Defendant Aspiration Growth Opportunities II, LP ("AGO II LP") is a Delaware limited partnership. On information and belief, Sanberg controlled AGO II LP at all relevant times. Between October 2020 and October 2021, AGO II LP was a party or signatory to several stock advance deals between Plaintiffs and Defendants, and received at least $3,466,928.64 in advance proceeds. On information and belief, Aspiration has no interest in or control over AGO II LP.

17.    Defendant Aspiration Growth Opportunities II GP, LLC ("AGO II GP") is a Delaware limited liability company. AGO II GP is and was at all relevant times the General Partner of Defendant AGO II LP and oversaw the running of AGO II LP. On information and belief, Sanberg controlled AGO II GP at all relevant times. Between October 2020 and October 2021, AGO II GP was a party or signatory to several stock advance deals between Plaintiffs and Defendants. On information and belief, Aspiration has no interest in or control over AGO II GP.

18.    Defendant Aspiration Growth Opportunities III, LP ("AGO III LP") is a Delaware limited partnership. On information and belief, Sanberg controlled AGO III LP at all relevant times. Between October 2020 and October 2021, AGO III LP was a party or signatory to several

stock advance deals between Plaintiffs and Defendants, and received at least $12,357,064.63 in advance proceeds. On information and belief, Aspiration has no interest in or control over AGO III LP.

19.      Defendant AGO III GP, LLC ("AGO III GP") is a Delaware limited liability company. AGO III GP is also registered as a foreign limited liability company in the State of California. AGO III GP is and was at all relevant times the General Partner of Defendants AGO III LP and AGO Special Situations LP and oversaw the running of AGO III LP and AGO Special Situations LP. On information and belief, Sanberg controlled AGO III GP at all relevant times. Between October 2020 and October 2021, AGO III GP was a party or signatory to several stock advance deals between Plaintiffs and Defendants. On information and belief, Aspiration has no interest in or control over AGO III GP.

20.      Defendant AGO Special Situations LP is a Delaware limited partnership. On information and belief, Sanberg controlled AGO Special Situations LP at all relevant times. Between October 2020 and October 2021, AGO Special Situations LP was a party or signatory to several stock advance deals between Plaintiffs and Defendants, and received at least $2,066,209.61 in advance proceeds. On information and belief, Aspiration has no interest in or control over AGO Special Situations LP .

21.      Sanberg was the Managing Member of the Defendant Entities at the time that they entered into the advance agreements with Plaintiffs, which are the agreements at issue in this case. Upon information and belief, Sanberg created these entities for the sole purpose of fraud, including the fraud claims in this case. Upon information and belief, Sanberg was the owner of each of these entities, either directly or indirectly, operated these entities by himself, and made fraudulent representations through these entities to induce Plaintiffs to enter into the relevant

Agreements. In other words, Sanberg used his domination of the Defendant Entities to convince Plaintiffs to enter the Agreements which resulted in the harm suffered by the Plaintiffs.

22.    Plaintiffs do not know the true names or capacities, whether individual, associate, corporate, or otherwise, of the Defendants sued as Does 1-10 (the "Doe Defendants") and therefore sue the Doe Defendants under such fictitious names. Plaintiffs will amend the Complaint to show the true names and capacities of the Doe Defendants when and as Plaintiffs ascertain the same. Plaintiffs are informed and believe that each of the Doe Defendants acted in concert or privity with the other Defendants and with each other and that Plaintiffs' injuries were proximately caused by the Doe Defendants' acts and omissions.

## JURISDICTION AND VENUE

23.    This action arises, *inter alia*, under and pursuant to 17 CFR § 240.10b-5, which was promulgated under 15 U.S.C. § 78j(b) (Section 10(b) of the Securities Exchange Act of 1934).

24.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises, *inter alia*, under the securities laws of the United States, specifically 17 CFR § 240.10b-5, which was promulgated under 15 U.S.C. § 78j(b). This Court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 78aa, which grants the district courts of the United States "exclusive jurisdiction of violations of [the Securities Exchange Act of 1934] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by [the Act] or the rules and regulations thereunder."

25.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over claims arising under state law.

26.    Venue is proper in the Southern District of New York pursuant to, *inter alia*, 28 U.S.C. §§ 1391(b), (c), and (d), in that a substantial part of the events and omissions giving rise

to Plaintiffs' claims occurred in this district. Specifically, Plaintiffs negotiated, evaluated, and signed all of their agreements with Defendants in Manhattan, and Plaintiffs would not have signed them had they known the truth regarding the material misrepresentations and omissions that Sanberg made and directed to Plaintiffs in Manhattan.

27.    The Court has personal jurisdiction over Defendants because Defendants: (i) committed and/or benefitted from their wrongful acts in this state; and (ii) have submitted to the jurisdiction of this Court by way of Section 16 of the Private Securities Contracts entered into by parties.

## FACTUAL BACKGROUND

### A Brief History of Aspiration Partners, Inc.

28.    In 2013, Defendant Sanberg and Andrei Cherny co-founded Aspiration Partners, Inc., a privately held financial services company purportedly focused on environmental sustainability. Aspiration is a Delaware corporation based in Marina del Rey, California. Sanberg served as a member of Aspiration's board of directors until March 2025, and was at times Aspiration's largest shareholder. As of September 2021, Sanberg and entities he controlled held 29.82% of Aspiration's shares. Cherny served as Aspiration's Chief Executive Officer from 2013 until October 2022 and was also at times a member of Aspiration's board of directors.

29.    Aspiration was purportedly formed to provide consumer banking services to consumers focused on environmental sustainability. For several years, Aspiration appeared to be a promising startup. The most important aspect of this image was the company's financials, which were pumped up and unreliable because of Sanberg's frauds. Beyond the numbers were the deals that Aspiration made with highly regarded businesses, which acted as a vouching mechanism for Aspiration. Chief among these was Aspirations partnership with the Los Angeles Clippers, an NBA team, though recent reporting indicates that too may have been infused with

fraud which harmed Aspiration investors.[3] Plaintiffs considered and took into account the high profile entities that were engaging with Aspiration, such as the Clippers, when they evaluated Aspiration and the transactions they entered into with Sanberg and the Defendant Entities.

30.     In early 2024, Aspiration changed its name to CTN Holdings, Inc. ("Catona").

31.     On March 3, 2025, Sanberg was arrested on a federal criminal complaint in the Central District of California alleging that he conspired to defraud two investor funds of at least $145 million. On March 25, 2025, Sanberg was charged with conspiracy to commit wire fraud in *United States of America v. Joseph Neal Sanberg*, Case No. 2:25-cr-00200(A)-SVW, which is currently pending in the United States District Court for the Central District of California and concerns how Sanberg used his status, access, and resources as a co-founder and board members of Aspiration to perpetuate a years-long scheme to defraud lenders and investors out of millions of dollars. In October 2025, Sanberg pleaded guilty to committing fraud.

32.     On March 30, 2025, Catona filed for bankruptcy. According to the Wall Street Journal, Catona's Chief Restructuring Officer explained that after federal prosecutors brought Sanberg's criminal fraud to light, the company could not raise enough capital to operate.[4] The company is now worth negative $181 million. *See In Re: CTN Holdings, Inc.*, Case No. 25-10603-TMH, Dkt. No. 382 at 2 (Bankr. D. Del. Sept. 15, 2025).

---

[3]     *See, e.g.*, at https://www.nytimes.com/athletic/6618230/2025/09/11/aspiration-paid-kawhi-leonard-days-after-investment-by-clippers-minority-owner-report; https://www.latimes.com/california/story/2025-10-14/company-involved-in-kawhi-leonard-salary-cap-investigation-had-troubled-dealings.

[4]     Available at: https://www.wsj.com/articles/celebrity-backed-bankrupt-carbon-credit-seller-arranges-financing-amid-fraud-charges-against-co-founder-17ca3119

**Defendant Joseph Sanberg Has Pleaded Guilty to Defrauding Lenders and Investors Out of More Than $248 Million**

33.     On August 20, 2025, several months after being arrested and charged with conspiracy to defraud two investor funds, Sanberg signed a plea agreement whereby he agreed to plead guilty to a Superseding Information that charged him with a much broader fraud related to Aspiration. He entered his guilty plea on October 20, 2025. The following allegations in paragraphs 34 through 37 below are based on Sanberg's admissions contained in Attachment A ("Factual Basis") to his Plea Agreement, the government's sworn criminal complaint against him, and the SEC's complaint against him, which are attached hereto as **Exhibits A-C**, respectively. Plaintiffs incorporate by reference the factual statements from these documents as though they were fully stated herein. Plaintiffs do not have personal knowledge of these facts and so rely on the government's filings and Sanberg's admissions. Together, those documents detail how Sanberg committed rampant fraud related to Aspiration stock from January 2020 through early 2025, which involved numerous victims with a combined loss amount that exceeds $248 million. Many victims are unnamed in the government's filings. Government prosecutors recently told victims that the funds available for restitution in the criminal matter are unlikely to fully compensate Sanberg's victims' losses. Plaintiffs are among this group, and their losses alone total more than $20 million.

34.     The federal court filings demonstrate that Sanberg engaged in three different but related frauds related to Aspiration stock: the "Loan Fraud," the "Revenue Fraud," and the "Inflated Assets Fraud."

35.     The Loan Fraud outlined in the government filings concerns three fraudulently obtained loans. Two were obtained through similar means, wherein Sanberg put up Aspiration shares as collateral and his co-conspirator Ibrahim AlHusseini agreed to purchase those shares

from the lenders if Sanberg defaulted. AlHusseini had to show that he had sufficient assets to purchase the shares in the event of a default, but he lacked such resources. To trick the lenders into thinking otherwise, Sanberg and AlHusseini had someone alter AlHusseini's financial statements to make it look like he had much more money than he actually did. Through this scheme, in January 2020 Sanberg received approximately $55 million from Investor Fund A and in November 2021 Sanberg received approximately $155 million from Clover Private Credit Opportunities Origination (Levered) II LP ("Clover").[5] Sanberg obtained a third fraudulent loan in January 2025, for which he put up Aspiration shares as collateral for $16 million dollars from Investment Manager 1. To obtain this loan, he sent Investment Manager 1 a fake audit report that falsely claimed to be from Aspiration's Audit Committee and stated that Aspiration had "a balance of cash and equivalents of at least $250,000,000." But in reality, the amount was less than $1 million.

36.    The Revenue Fraud outlined in the government's pleadings involved Sanberg causing Aspiration's revenue to be falsely inflated and misrepresented so as to induce investments from victim investors. Beginning no later than January 2021, Sanberg solicited small businesses and individuals, directly and through intermediaries, to sign "Letters of Intent" ("LOIs") with Aspiration. The LOIs stated that each small business or individual (collectively, the "LOI Customers") would pay Aspiration for tens of thousands of trees to be planted on a recurring monthly or quarterly basis at a price of $1 per tree. On paper, the LOIs appeared very valuable to Aspiration because their commitments required large monthly or quarterly contributions. But many of the LOI Customers were not actually bona fide customers. Sanberg's

---

[5]    The filings in the criminal case refer to Aspiration as "Company A" and refer to Clover as "Investor Fund B."

solicitations came with the promise that he would pay the LOI customers back. Thus, the value provided by the LOIs was fake because Sanberg was secretly making the payments for these customers, a practice that continued through at least November 2021. By November 2021 Sanberg had secretly paid Aspiration over $33 million to cover the LOI Customers, which in and of itself represented a large portion of Aspiration's claimed revenue. In Fiscal Year 2021, Aspiration claimed revenues of $100.6 million. This Revenue Fraud allowed Aspiration to promote itself as experiencing "explosive growth." It also led to Aspiration giving Sanberg millions in bonuses, much of which he used to make more shadow payments for the LOI Customers.[6]

37.     The Inflated Assets Fraud outlined in the government's pleading demonstrate that from at least in or around June 2024 to in or around January 2025, Sanberg knowingly and intentionally made, and caused to be made, materially false and fraudulent representations that overstated Aspiration's available cash by hundreds of millions of dollars to investors for the purpose of influencing their decisions to invest in securities related to Aspiration.

**Plaintiffs Advanced Sanberg Over $20 Million Between 2020-2021**

38.     Between October 2019 and July 2020, Sanberg repeatedly contacted officers and employees of Serengeti, including Serengeti's founder, Managing Partner, and Chief Investment Officer, in an effort to obtain an advance against his Aspiration shares.

39.     Serengeti initially refused but reconsidered that decision in August 2020, after Sanberg emailed Serengeti an update on Aspiration's financial condition.

---

[6]     While Sanberg's secret payments resulted in money actually going to Aspiration, they deceptively made it appear as though there was more market demand than was actually the case for Aspiration's product. Moreover, the shadow payments were not sustainable because Sanberg could not afford to and was unable to continue making them indefinitely. So while the LOIs appeared to suggest sustainable revenue, the reality was the opposite.

40.    As described in more detail below, from October 2020 through October 2021, Plaintiffs made four advances totaling more than $20 million to Sanberg through Defendant Entities AGO I LP, AGO II LP, AGO III LP, and AGO Special Situations LP, against Sanberg's shares of Aspiration stock held by those Defendant Entities. Each advance worked essentially the same in all material respects. Serengeti served as the Agent of another Plaintiff, which was an investment company. As the Agent, Serengeti has the authority to exercise the legal rights of the Plaintiff investment company, which was the party that paid each advance to the relevant Defendant(s). The Plaintiff investment companies made these advances, and in return, stood to reap substantial profits if certain Trigger Events occurred related to the value of Aspiration shares, such as Aspiration becoming a publicly traded company. In each advance, Sanberg and the Defendant Entities that were party to the advance agreed to pay expenses, including attorneys' fees and costs, associated with Plaintiffs enforcing their rights under the agreements governing the advances.

41.    Sanberg made numerous material misrepresentations and omissions regarding Aspiration's finances that Plaintiffs relied on to their detriment in the four advances that they made to Defendants. Additionally, at no point before, during, or after any of Plaintiffs' advances were negotiated or made did Sanberg, whether acting individually or through or on behalf of any of the Defendant Entities, disclose to Plaintiffs that he had committed any aspect of the Loan Fraud, Revenue Fraud, or Inflated Assets Fraud. Nor did he inform Plaintiffs that Aspiration's financials, including those that he had provided to Plaintiffs, were highly inaccurate because of his frauds. Likewise, Sanberg's frauds were not generally known in the public or financial industry. Plaintiffs, the public, and the industry did not learn about them until Sanberg's 2025 criminal case.

42.     Of course, Plaintiffs would not have entered into any of the agreements that they did had they known that Sanberg had committed any fraud.

43. The financial industry generally viewed Sanberg as the face of Aspiration. Given his status as the company's founder, his role on the board, and the amount of stock that he held, Sanberg was inextricably intertwined with Aspiration. Any criminal fraud on Sanberg's part, especially any fraud related to Aspiration, jeopardized Aspiration's ability to stay in business. As such, it is no surprise that Aspiration (under its new name) declared bankruptcy the same month that Sanberg was arrested in his criminal case, and that Catona's Chief Restructuring Officer blames Sanberg's crimes as being responsible for Aspiration's collapse.

44.     On information and belief, Sanberg and the Defendant Entities that he controlled used Plaintiffs' money to enrich Sanberg personally and to facilitate Sanberg's other frauds related to Aspiration.

### *The October 2020 $4.7 Million Advance*

45.     Between September 2020 and October 2020, Sanberg, acting individually and through or on behalf of Defendant Entities AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situations LP, negotiated with Plaintiffs Serengeti and Portfolio S Aggregator II LP an advance of $4,687,500 to AGO II LP, AGO III LP, and AGO Special Situations LP against 1,454,025 of Sanberg's Aspiration shares held by the aforementioned Defendant Entities. The shares were to be pledged as collateral for the advance. The parties electronically executed and exchanged the relevant deal documents on October 13, 2020, and Serengeti wired the funds to these Defendant Entities on October 14, 2020.

46.     Sanberg, through the Defendant Entities identified in the previous paragraph, pledged the following Aspiration shares as collateral for the advance: (i) 77,481 shares of Series C-1 Preferred Stock held by Defendant AGO II LP; (ii) 942,131 shares of Series C-1 Preferred

Stock held by Defendant AGO III LP; and (iii) 434,413 shares of Series C-1 Preferred Stock held by Defendant AGO Special Situations LP.

47.     In return for the pledged Aspiration shares, Portfolio S Aggregator II LP, through Serengeti, made the following payments: (i) $239,792.64 to AGO II LP; (ii) $2,915,761.08 to AGO III LP; and (iii) $1,344,446.28 to AGO Special Situations LP.

48.     Portfolio S Aggregator II LP, through Serengeti, paid the remaining $187,500 of the advance as fees to SecFi, its origination partner in the deal.

49.     The advance was memorialized and governed by Stock Pledge Agreements and Private Securities Contracts for each of the participating Defendant Entities, as well as a Pledge Waiver and Consent ("Pledge Waiver"). Sanberg signed these agreements on behalf of himself and on behalf of the participating Defendant Entities involved in this deal.

50.     The Private Securities Contracts contain provisions that are intended to protect Plaintiffs from suffering losses on the advance due to omissions of material information by Defendants.

51.     Section 6(c) of the Private Securities Contracts requires Sanberg and each of the participating Defendant Entities to notify Plaintiff Portfolio S Aggregator II LP of information known to them that would reasonably have an adverse effect on the value of the pledged Aspiration shares or the validity of the parties' agreement:

**6.      Sale of Collateral; Settlement Date; Notice Obligations.**

. . .

(c)     Counterparty and Individual agree to promptly notify Investor of . . . (iv) any event development or circumstance of which it has actual knowledge that would reasonably be expected to have a material adverse effect on the value, liquidity or marketability of the Reference Securities or the legality, validity or enforceability of this Agreement or any other Related Agreement (excluding, in the case of clause (iv), information or news known to the general public).

52.    All of the advances that Plaintiffs entered into with Defendants contain the above language from Section 6(c) in their respective Private Securities Contracts.

53.    At the time the parties began negotiating the October 2020 advance in September 2020, Sanberg had already committed the Loan Fraud against Investor Fund A, which no defendant ever disclosed to Plaintiffs. The information Sanberg did disclose to Plaintiffs was false information regarding Aspiration's value, and Sanberg was aware that it was false. For instance, on September 3, 2020, Sanberg emailed Aspiration's Balance Sheet to Serengeti. That document represented that Aspiration's total shareholder equity was nearly $53 million. But this value was overstated because of the Loan Fraud against Investor A. The aforementioned Balance Sheet Sanberg sent Serengeti in September 2020 served as a basis for providing the advance amount.

54.    Additionally, at no point *after* the October 2020 advance was made did any Defendant reveal to Plaintiffs any of the frauds Sanberg committed after October 2020: i.e., the Loan Fraud, the Revenue Fraud, and the Inflated Assets Fraud.

55.    Pursuant to Section 6(c) of the parties' Private Securities Contracts, Defendants should have disclosed to Plaintiffs these post-advance frauds because such conduct by Sanberg— a co-founder, board member, and major shareholder of Aspiration—would reasonably be expected to have a material adverse effect on the value, liquidity or marketability of the Aspiration shares pledged as collateral for the advance, or the legality, validity, or enforceability of the parties' agreement or any other related agreement.

### *The February 2021 $8.2 Million Advance*

56.    Between January 2021 and February 2021, Sanberg, acting individually and through or on behalf of Defendant Entities AGO I LP, AGO I GP, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situations LP, negotiated with Plaintiffs Serengeti and

Portfolio S Aggregator III LP an advance of $8,199,456 to AGO I LP, AGO II LP, AGO III LP, and AGO Special Situations LP against 2,562,469 of Sanberg's Aspiration shares held by the aforementioned Defendant Entities. The shares were to be pledged as collateral for the advance. The parties electronically executed and exchanged the relevant deal documents on February 3, 2021, and Serengeti wired the funds to the Defendant Entities on February 5, 2021.

57.    Sanberg, through the participating Defendant Entities, pledged the following Aspiration shares as collateral for the advance: (i) 55,290 shares of Series A Preferred Stock and 492,000 shares of Series Seed stock held by Defendant AGO I LP; (ii) 17,604 shares of Series C-1 Preferred Stock, 61,351 shares of Series B-3 Preferred Stock, 904,050 shares of Series A Preferred Stock, and 67,500 shares of Series Seed stock held by Defendant AGO II LP; (iii) 214,087 shares of Series C-1 Preferred Stock, 425,399 of Series B-1 Preferred Stock, and 90,169 shares of Series B-3 Preferred Stock held by Defendant AGO III LP; and (iv) 235,019 shares of Series C-1 Preferred Stock held by AGO Special Situations LP.

58.    In return for the pledged Aspiration shares, Portfolio S Aggregator III LP, through Serengeti, made the following payments to the participating Defendant Entities: (i) $1,681,274.88 to AGO I LP; (ii) $3,227,136 to AGO II LP; (iii) $2,241,303.55 to AGO III LP; and (iv) $721,763.33 to AGO Special Situations LP.

59.    Portfolio S Aggregator III LP, through Serengeti, paid the remaining $327,978.24 of the advance as fees to SecFi, its origination partner in the deal.

60.    The advance was memorialized and governed by a Stock Pledge Agreement, Private Securities Contract, and Pledge Waiver. Sanberg signed these agreements on behalf of himself and on behalf of the Defendant Entities involved in this deal.

61. The Private Securities Contract contains the same Section 6(c) discussed above in reference to the October 2020 advance that is intended to protect Plaintiffs from suffering losses on the advance due to omissions of material information by Defendants.

62. At the time the parties began negotiating the February 2021 advance in January 2021, Sanberg had already committed the Loan Fraud against Investor Fund A and had begun committing his Revenue Fraud.

63. During the course of negotiating this contract, Sanberg shared documents with Serengeti regarding Aspiration's finances that he knew were false and based on Sanberg's Revenue Fraud. For example, on February 1, 2021, just days before executing the documents for the second advance, Sanberg sent Serengeti a PowerPoint deck that characterized the sham LOIs from Sanberg's Revenue Fraud as "[m]ultiple contracts signed as of January 2021, contributing high-quality recurring revenue." That deck also contained a statement that Aspiration had experienced "[e]xplosive growth" and used a "scalable and sustainable business model." This statement was also false, as the Revenue Fraud and Loan Fraud against Investor Fund A had already set in motion Aspiration's downfall. This PowerPoint document served as a basis for providing the advance amount.

64. Additionally, at no point *after* the February 2021 advance was made did any Defendant reveal to Plaintiffs any of the frauds Sanberg committed after this advance: i.e., the Loan Fraud and Revenue Fraud and the Inflated Assets Fraud.

65. Pursuant to Section 6(c) of the parties' Private Securities Contracts, Defendants should have disclosed to Plaintiffs these post-advance frauds because such conduct by Sanberg— a co-founder, board member, and major shareholder of Aspiration—would reasonably be expected to have a material adverse effect on the value, liquidity or marketability of the

Aspiration shares pledged as collateral for the advance, or the legality, validity, or enforceability of the parties' agreement or any other related agreement.

### ***The September & October 2021 $7.5 Million Advances***

66.    In late August 2021, Sanberg sought an advance of $7.5 million from Serengeti. Sanberg claimed that he needed the money to buy 400,000 shares of Aspiration stock from an investor facing liquidity issues.

67.    Between August 2021 and September 2021, Sanberg, acting individually or through or on behalf of Defendant Entities AGO I LP, AGO I GP, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situations LP, negotiated with Plaintiffs Serengeti, Portfolio S Aggregator III LP, Serengeti Caracal Master Fund, LP, Serengeti Caracal Multi-Series Master LLC—Series EC, and Serengeti Caracal Multi-Series Master LLC—Series AL an advance of $7.5 million to AGO III LP against the 400,000 Aspiration shares that Sanberg intended to purchase with the proceeds of the advance. The shares were to be pledged as collateral for the advance.

68.    To facilitate obtaining this loan, Sanberg provided Serengeti with representations regarding Aspiration's finances that Sanberg knew to be false. Indeed, Sanberg introduced the idea of the advance to Serengeti on August 27, 2021, by replying to a previous email he had sent Serengeti that contained an update from Aspiration's CEO. Sanberg explained that he was replying to this email so that Serengeti could "refer to the numbers" in the update. That update proclaimed that Aspiration was on its way to becoming "the first ESG-focused consumer financial institution to be a public company." It explained that Aspiration had an "implie[d]" equity value of approximately $2.3 billion. It then linked to a press release which states that Aspiration "has a revenue run rate in excess of $100 million as of June 2021 and has driven over

7x growth in the past year." On information and belief, these representations were all false and Sanberg was aware of that fact.

69.    On information and belief, tens of millions of that $100 million revenue run rate was based on Sanberg's Revenue Fraud.[7] Additionally, Aspiration never did and never was going to become a publicly traded company, something Sanberg must have known given his sophisticated financial background. Going public requires an intense and in-depth review of a company's books, scrutiny that his Revenue Fraud would never survive. And Aspiration was not worth billions. Sanberg's frauds had already set the stage for the company's implosion.

70.    Nevertheless, with Plaintiffs unaware of these falsehoods, the parties structured the $7.5 million advance as two deals. The first of these occurred in September 2021 and the second in October 2021.

71.    In September 2021, Aspiration and the Clippers entered into a significant sponsorship deal that included arena naming rights and a jersey patch. This followed a significant personal investment into Aspiration by the Clippers' majority owner, a high profile and respected business figure. This deal and transaction were publicly touted by Sanberg and others at Aspiration in order to validate Aspiration and its financial projections and statements in the eyes of Plaintiffs and other victims. Public reporting now suggests that the Clippers' arrangement with Aspiration was itself potentially rife with fraud which may also have caused damage to Plaintiffs.

---

[7]    *See SEC v. Sanberg*, Case No8:25-cv-01848, Dkt. No. 1 ¶ 11 (C.D. Cal. Aug. 21, 2025) (alleging that that by the end of fiscal year 2021, $44 million of Aspiration's claimed revenue was based on the Revenue Fraud).

*September 2021: Serengeti Advanced Sanberg $5 Million*

72. The first of the two deals was for $5 million against 266,667 Aspiration shares that Sanberg planned to purchase with the advance proceeds. The parties electronically executed and exchanged the relevant deal documents on September 23, 2021, and Serengeti wired the funds to Defendant entity AGO III LP on September 24, 2021.

73.    Sanberg, through AGO III LP, pledged 266,667 shares of Aspiration Series C-2 Preferred Stock to be acquired by AGO III using the proceeds of the advance.

74.    In return for the pledged Aspiration shares, Portfolio S Aggregator III LP, through Serengeti, paid AGO III LP $4.8 million.

75.    Portfolio S Aggregator III LP, through Serengeti, paid the remaining $200,000 of the advance as fees to SecFi, its origination partner in the deal.

76.    The advance was memorialized and governed by a Stock Pledge Agreement, Private Securities Contract, and Pledge Waiver. Sanberg signed these agreements on behalf of himself and on behalf of the Defendant Entities involved in this deal.

*October 2021: Serengeti Advanced Sanberg $2.5 Million*

77. The second of the two deals was for $2.5 million against 133,333 Aspiration shares that Sanberg planned to purchase with the advance proceeds. The parties electronically executed and exchanged the relevant deal documents on or about October 1, 2021, and Serengeti wired the funds to Defendant entity AGO III LP on October 1, 2021.

78.    Sanberg, through AGO III LP, pledged 133,133 shares of Aspiration Series C-2 Preferred Stock to be acquired by AGO III using the proceeds of the advance.

79.    In return for the pledged Aspiration shares, Serengeti Caracal Master Fund, LP, Serengeti Caracal Multi-Series Master LLC—Series EC, and Serengeti Caracal Multi-Series Master LLC—Series AL, through Serengeti, paid AGO III LP $2.4 million.

80.     Serengeti Caracal Master Fund, LP, Serengeti Caracal Multi-Series Master LLC—Series EC, and Serengeti Caracal Multi-Series Master LLC—Series AL, through Serengeti, paid the remaining $100,000 of the advance as fees to SecFi, its origination partner in the deal.

81.     The advance was memorialized and governed by a Stock Pledge Agreement, Private Securities Contract, and Pledge Waiver. Sanberg signed these agreements on behalf of himself and on behalf of the Defendant Entities involved in this deal.

*Defendants Failed to Disclose Their Fraud and Made Material Misrepresentations and Omission to Plaintiffs In Connection With the September and October 2021 Advances*

82.     At the time the parties began negotiating the September 2021 and October 2021 advances in August 2021, Sanberg had already committed the Loan Fraud against Investor Fund A and his ongoing Revenue Fraud was well underway.

83.     The above-discussed update from Aspiration's CEO and the press release it linked to contained materially false financial representations because of these frauds. Those documents served as a basis for providing the advance amounts for the September 2021 and October 2021 advances.

84.     Additionally, at no point *after* the September 2021 and October 2021 advances were made, did any Defendant reveal to Plaintiffs any of the frauds Sanberg committed after these advances: i.e., the Loan Fraud and Revenue Fraud and the Inflated Assets Fraud.

85.     Pursuant to Section 6(c) of the parties' Private Securities Contracts, Defendants should have disclosed to Plaintiffs these post-advance frauds because such conduct by Sanberg would reasonably be expected to have a material adverse effect on the value, liquidity or marketability of the Aspiration shares pledged as collateral for the advance, or the legality, validity, or enforceability of the parties' agreement or any other related agreement.

*Double-pledging of shares by Sanberg*

86.     On information and belief, based on the public filings to date, Plaintiffs believe that Sanberg likely double-pledged the shares used in the various Agreements described above. This was another fraud committed by Sanberg, in that, on information and belief, he used the same shares to obtain multiple loans from multiple victims, including Plaintiffs. A material representation by Sanberg and the Defendant Entities in the various contracts described above was that the shares were not otherwise encumbered and that no new encumbrance would be added to interfere with Plaintiffs' rights to the shares. On information and belief, such representation was false.

## Plaintiffs Had No Idea About Sanberg's Fraud Until It Was Too Late

87.     As alleged above, Plaintiffs did not know and could not have known when they negotiated and agreed to provide Defendants with the four advances against Defendants' Aspiration stock that Sanberg had committed fraud related to Aspiration and his shares of Aspiration. Plaintiffs could not have discovered Sanberg's unlawful conduct with reasonable due diligence.

88.     Sanberg secretly engaged in the aforementioned fraud, and no indication was provided to Plaintiffs that Sanberg had committed fraud against lenders and investors, and that the information Plaintiffs relied on to negotiate, value, and agree to advances of millions of dollars against Defendants' Aspiration stock was therefore false and incomplete.

89.     On information and belief, the only ones who knew about Sanberg's frauds were Sanberg, the Defendant Entities (because Sanberg controlled them), and Sanberg's co-conspirator(s) (who have not all been publicly identified).

90.     Plaintiffs could not with due diligence have discovered the full scope of Sanberg's conduct because he took steps to conceal his fraudulent conduct, and neither the Defendants nor

Aspiration disclosed any of the fraudulent conduct described herein. On the contrary, Sanberg, and Aspiration relying on Sanberg's false statements and material omissions, made numerous public and private statements touting the financial stability and amazing growth prospects for the business, including the likelihood of a public offering.

91.     Plaintiffs did not know and could not have known about the scope of Sanberg's fraud which gives rise to all of the claims in this case, and how that fraud affected Plaintiffs' investments, until certain documents describing that fraud were publicly filed in August 2025.

92.     Indeed, Aspiration, under its new name Catona, declared bankruptcy the same month that Sanberg was arrested in his criminal case, which at the time, focused exclusively on just part of the Loan Fraud. Catona's Chief Restructuring Officer blames the conduct that led to that criminal case as being responsible for Aspiration's collapse. The collapse soon after that conduct clearly became publicly known demonstrates that Sanberg's frauds were successfully hidden until he was criminally charged.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(Violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (17 CFR § 240.10b-5) Thereunder: Plaintiffs Serengeti and Portfolio S Aggregator II LP Against Defendants Sanberg, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situations LP)**

93.     Plaintiffs[8] incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

---

[8]     In the Claims for Relief section, "Plaintiffs" refers only to the Plaintiffs suing in the relevant claim; "Defendants" refers to the Defendants being sued in that claim; and "Defendant Entities" refers only to the Defendant Entities being sued in that claim.

94.     Between September 2020 and October 2020, Sanberg, acting individually and through or on behalf of Defendant Entities AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situations LP, negotiated with Serengeti and Portfolio S Aggregator II LP an advance of $4,687,500 to these Defendant Entities against 1,454,025 of Sanberg's Aspiration shares held by these same Defendant Entities. The pledged shared were to be collateral for the advance. The parties electronically executed and exchanged the relevant deal documents on October 13, 2020, and Serengeti wired the funds to the Defendant Entities on October 14, 2020.

95.     The pledging of shares by Defendants was equivalent to a sale of securities for the purposes of the antifraud provisions of the federal securities laws. *See Mallis v. Fed. Deposit Ins. Corp.*, 568 F.2d 824, 830 (2d Cir. 1977) (pledge of securities held to be a "sale of securities" because "a pledge fulfills the familiar requirement that the fraud occur 'in connection with the purchase or sale' of a security")

96.     This Loan Fraud against Investor Fund A made certain of Sanberg's statements to Serengeti false and misleading, such as the financial information regarding Aspiration that he sent to Serengeti on September 3, 2020. For instance, one of the documents that he sent on September 3, 2020, claimed that Aspiration had "Total Shareholders Equity" of $52,990,188. But this value was overstated because of the Loan Fraud against Investor A.

97.     Sanberg, whether acting individually or through or on behalf of any of the Defendant Entities, used the means or instrumentalities of interstate commerce, including telephone and email, to negotiate and obtain the October 2020 advance.

98.     Plaintiffs justifiably relied on Sanberg's above-noted fraudulent financial representations and omissions from September 3, 2020, in making the October 2020 advance to

Defendants. Plaintiffs did not know that these representations were false in light of Sanberg's

hidden Loan Fraud against Investor Fund A.

99.     As a result of Sanberg's omissions and misrepresentations, Plaintiffs agreed to

provide Defendants the October 2020 advance of $4,687,500. Plaintiffs would not have made the

October 2020 advance to Defendants had Sanberg not made the above misrepresentations and

concealed material information. With Catona's bankruptcy and heavy indebtedness, the value of

the pledged shares are now worthless.

100.     By making the October 2020 advance to Defendants, Plaintiffs suffered economic

losses, which were a direct and proximate result of Defendants' fraudulent conduct.

101.     In light of the foregoing, Defendants are liable to Plaintiffs for violating Section

10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (17 CFR § 240.10b-5) promulgated

thereunder.

## SECOND CLAIM FOR RELIEF

**(Violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (17 CFR**

**§ 240.10b-5) Thereunder: Plaintiffs Serengeti and Portfolio S Aggregator III LP Against**

**Defendants Sanberg, AGO I LP, AGO I GP, AGO II LP, AGO II GP, AGO III LP, AGO**

**III GP, and AGO Special Situations LP)**

102.     Plaintiffs incorporate by reference in their entirety the preceding paragraphs of

this Complaint, as if fully set forth herein.

103.     Between January 2021 and February 2021, Sanberg, acting individually or

through or on behalf of Defendant Entities AGO I LP, AGO I GP, AGO II LP, AGO II GP, AGO

III LP, AGO III GP, and AGO Special Situations LP, negotiated with Serengeti and Portfolio S

Aggregator III LP an advance of $8,199,456 to these Defendant Entities against 2,562,469 of

Sanberg's Aspiration shares held by these Defendant Entities. The shares were pledged as collateral for the advance. The parties electronically executed and exchanged the relevant deal documents on February 3, 2021, and Serengeti wired the funds to the Defendant Entities on February 5, 2021.

104.    The pledging of shares by Defendants was equivalent to a sale of securities for the purposes of the antifraud provisions of the federal securities laws.

105.    One of the documents that Sanberg sent Serengeti on February 1, 2021, was a PowerPoint deck that characterized the sham LOIs from his Revenue Fraud as: "[m]ultiple contracts signed as of January 2021, contributing high quality recurring revenue." This was a knowing misrepresentation, because the LOIs represented fake deals, they were not sources of high quality recurring revenue. That deck also stated that Aspiration had experienced "[e]xplosive growth" and used a "scalable and sustainable business model." This statement was also false, as the Revenue Fraud and Loan Fraud against Investor Fund A had already set in motion Aspiration's downfall.

106.    Sanberg, whether acting individually or through or on behalf of any of the Defendant Entities, used the means or instrumentalities of interstate commerce, including telephone and email, to negotiate and obtain the February 2021 advance.

107.    Plaintiffs justifiably relied on Sanberg's above-noted financial representations from February 1, 2021, in making the February 2021 advance to Defendants. Plaintiffs did not know that these representations were false in light of Sanberg's hidden Loan Fraud against Investor Fund A and his hidden Revenue Fraud.

108.    Beyond the false representations identified in this advance, Plaintiffs relied on the false representations involved in the October 2020 advance. Defendants never corrected those

false statements, and Plaintiffs relied on them for purposes of agreeing to the February 2021 advance. Those misrepresentations are specifically identified in Claim One and are incorporated here by reference.

109.    As a result of Sanberg's misrepresentations, Plaintiffs agreed to provide Defendants the February 2021 advance of $8,199,456. Plaintiffs would not have made the February 2021 advance to Defendants had Sanberg not made the above misrepresentations and concealed material information. With Catona's bankruptcy and heavy indebtedness, the value of the pledged shares are now worthless.

110.    By making the February 2021 advance to Defendants, Plaintiffs suffered economic losses, which were a direct and proximate result of Defendants' fraudulent conduct.

111.    In light of the foregoing, Defendants are liable to Plaintiffs for violating Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (17 CFR § 240.10b-5) promulgated thereunder.

## THIRD CLAIM FOR RELIEF

**(Violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (17 CFR § 240.10b-5) Thereunder: Plaintiffs Serengeti and Portfolio S Aggregator III LP Against Defendants Sanberg, AGO I LP, AGO I GP, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situations LP)**

112.    Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

113.    In late August 2021, Sanberg sought an advance of $7.5 million from Serengeti. Sanberg claimed that he needed the money to buy 400,000 shares of Aspiration stock from an investor facing liquidity issues.

114.    Between August 2021 and September 2021, Sanberg, acting individually or through or on behalf of Defendant Entities AGO I LP, AGO I GP, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situations LP, negotiated with Serengeti an advance of $7.5 million to AGO III LP against the 400,000 Aspiration shares that Sanberg intended to purchase with the proceeds of the advance. The shares were to be pledged as collateral for the advance.

115.    The parties structured the advance as two deals, the first taking place in September 2021 and the second in October 2021. This claim relates to the September 2021 deal, and the next claim relates to the October 2021 deal.

116.    To facilitate obtaining these deals, Sanberg provided Serengeti with representations regarding Aspiration's finances that Sanberg knew to be false. Indeed, Sanberg introduced the idea of the advance to Serengeti on August 27, 2021, by replying to a previous email he had sent Serengeti that contained an update from Aspiration's CEO. Sanberg explained that he was replying to this email so that Serengeti could "refer to the numbers" in the update. That update proclaimed that Aspiration was on its way to becoming "the first ESG-focused consumer financial institution to be a public company." It explained that Aspiration had an "implie[d]" equity value of approximately $2.3 billion. It then linked to a press release, which states that Aspiration "has a revenue run rate in excess of $100 million as of June 2021 and has driven over 7x growth in the past year." These representations were all false.

117.    The parties electronically executed and exchanged the relevant deal documents for the September 2021 advance on September 23, 2021, and Plaintiffs wired the $5 million to Defendant entity AGO III LP, against 266,667 shares of Aspiration stock, on September 24, 2021.

118.    The pledging of shares by Defendants was equivalent to a sale of securities for the purposes of the antifraud provisions of the federal securities laws.

119.    Sanberg, whether acting individually or through or on behalf of any of the Defendant Entities, used the means or instrumentalities of interstate commerce, including telephone and email, to negotiate and obtain the September 2021 advance.

120.    Plaintiffs justifiably relied on Sanberg's above-noted financial representations from August 27, 2021, in making the September 2021 advance to Defendants. Plaintiffs did not know that these representations were false in light of Sanberg's hidden Loan Fraud against Investor Fund A and his hidden Revenue Fraud.

121.    Beyond the false representations identified in this advance, Plaintiffs relied on the false representations involved in the October 2020 and February 2021 advances. Defendants never corrected those false statements, and Plaintiffs relied on them for purposes of agreeing to the September 2021 advance. Those misrepresentations are specifically identified in Claims One and Two and are incorporated here by reference.

122.    As a result of Sanberg's misrepresentations, Plaintiffs agreed to provide Defendants the September 2021 advance of $5 million. Plaintiffs would not have made the September 2021 advance to Defendants had Sanberg not made the above misrepresentation and concealed material information. With Catona's bankruptcy and heavy indebtedness, the value of the pledged shares are now worthless.

123.    By making the September 2021 advance to Defendants, Plaintiffs suffered economic losses, which were a direct and proximate result of Defendants' fraudulent conduct.

124.    In light of the foregoing, Defendants are liable to Plaintiffs for violating Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (17 CFR § 240.10b-5) promulgated thereunder.

**FOURTH CLAIM FOR RELIEF**

**(Violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (17 CFR § 240.10b-5) Thereunder: Plaintiffs Serengeti, Serengeti Caracal Master Fund, LP, Serengeti Caracal Multi-Series Master LLC—Series EC, and Serengeti Caracal Multi-Series Master LLC—Series AL Against Defendants Sanberg, AGO III LP, and AGO III GP)**

125.    Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

126.    As noted in the previous claim, to facilitate the October 2021 advance, Sanberg provided Serengeti with representations regarding Aspiration's finances that Sanberg knew to be false. Indeed, Sanberg introduced the idea of the advance to Serengeti on August 27, 2021, by replying to a previous email he had sent Serengeti that contained an update from Aspiration's CEO. Sanberg explained that he was replying to this email so that Serengeti could "refer to the numbers" in the update. That update proclaimed that Aspiration was on its way to becoming "the first ESG-focused consumer financial institution to be a public company." It explained that Aspiration had an "implie[d]" equity value of approximately $2.3 billion. It then linked to a press release, which states that Aspiration "has a revenue run rate in excess of $100 million as of June 2021 and has driven over 7x growth in the past year." These representations were all false.

127.    The parties electronically executed and exchanged the relevant deal documents on or about October 1, 2021, and Plaintiffs wired $2.5 million to Defendant Entity AGO III LP, against 133,333 Aspiration shares, on October 1, 2021.

128.    The pledging of shares by Defendants was equivalent to a sale of securities for the purposes of the antifraud provisions of the federal securities laws.

129.    Sanberg, whether acting individually or through or on behalf of any of the Defendant Entities, used the means or instrumentalities of interstate commerce, including telephone and email, to negotiate and obtain the October 2021 advance.

130.    Plaintiffs justifiably relied on Sanberg's above-noted financial representations from August 27, 2021, in making the October 2021 advance to Defendants. Plaintiffs did not know that these representations were false in light of Sanberg's hidden Loan Fraud against Investor Fund A and his hidden Revenue Fraud.

131.    Beyond the false representations identified in this advance, Plaintiffs relied on the false representations involved in the October 2020 and February 2021 advances. Defendants never corrected those false statements, and Plaintiffs relied on them for purposes of agreeing to the October 2021 advance. Those misrepresentations are specifically identified in Claims One and Two and are incorporated here by reference.

132.    As a result of Sanberg's misrepresentations, Plaintiffs agreed to provide Defendants the October 2021 advance of $2.5 million. Plaintiffs would not have made the October 2021 advance to Defendants had Sanberg not made the above misrepresentations and concealed material information. With Catona's bankruptcy and heavy indebtedness, the value of the pledged shares are now worthless.

133.    By making the October 2021 advance to Defendants, Plaintiffs suffered economic losses, which were a direct and proximate result of Defendants' fraudulent conduct.

134.    In light of the foregoing, Defendants are liable to Plaintiffs for violating Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 (17 CFR § 240.10b-5) promulgated thereunder.

## FIFTH CLAIM FOR RELIEF

## (Fraudulent Concealment: Plaintiffs Serengeti and Portfolio S Aggregator II LP Against Defendants Sanberg, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situations LP)

135.    Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

136.    In negotiating and obtaining the advance of $4,687,500 from Plaintiffs Serengeti and Portfolio S Aggregator II LP in October 2020, Defendant Sanberg, whether acting individually or through or on behalf of any of Defendant Entities AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situation LP, did not disclose to Plaintiffs that he had committed the Loan Fraud against Investor Fund A.

137.    Sanberg, whether acting individually or through or on behalf of any of the Defendant Entities, had a duty to disclose the Loan Fraud to Plaintiffs because he possessed superior knowledge of the fraud, such that failure to disclose the Loan Fraud would render the October 2020 advance agreement inherently unfair. Knowledge of the Loan Fraud was not readily available to Plaintiffs, as Sanberg engaged in the fraud secretly, and Sanberg knew that Plaintiffs were acting on the basis of mistaken knowledge in agreeing to the October 2020 advance.

138.    Moreover, this omission contradicted statements that Sanberg made and that Plaintiffs relied on in agreeing to the October 2020 advance. One of the documents that Sanberg sent on September 3, 2020, claimed that Aspiration had "Total Shareholders Equity" of $52,990,188. But this value was overstated because of the Loan Fraud against Investor A.

139.    Sanberg, whether acting individually or through or on behalf of any of the Defendant Entities, knew that he had committed the Loan Fraud against Investor Fund A, but he did not disclose his fraudulent conduct to Plaintiffs despite his duty to do so.

140.    Sanberg's failure to disclose that he had committed the Loan Fraud was intentional, and done for the purpose of obtaining the October 2020 advance.

141.    Plaintiffs justifiably relied on Sanberg's omission regarding his commission of the Loan Fraud against Investor Fund A in making the October 2020 advance to Defendants. This omission was hidden from Plaintiffs and the public. Plaintiffs only learned about it from Sanberg's March 2025 criminal complaint.

142.    As a result of Sanberg's omissions, Plaintiffs agreed to provide Defendants the October 2020 advance of $4,687,500. Plaintiffs would not have made the October 2020 advance to Defendants had Sanberg disclosed to Plaintiffs his Loan Fraud against Investor Fund A. Plaintiffs do not engage in business with those who commit fraud of any type.

143.    By paying Defendants money that they otherwise would not have but for Sanberg's material omissions, Plaintiffs suffered damages as a direct and proximate cause of Sanberg's fraudulent concealment. With Catona's bankruptcy and heavy indebtedness, the value of the pledged shares are now worthless.

## SIXTH CLAIM FOR RELIEF

**(Fraudulent Concealment: Serengeti and Portfolio S Aggregator III LP Against Defendants Sanberg, AGO I LP, AGO I GP, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situations LP)**

144.    Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

145.    In negotiating and obtaining the advance of $8,199,456 from Plaintiffs Serengeti and Portfolio S Aggregator III LP in February 2021, Defendant Sanberg, whether acting individually or through or on behalf of any of Defendant entities AGO I LP, AGO I GP, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situation LP, did not disclose to Plaintiffs that he had committed the Loan Fraud against Investor Fund A and the Revenue Fraud.

146.    Sanberg, whether acting individually or through or on behalf of any of the Defendant entities, had a duty to disclose the Loan Fraud and Revenue Fraud to Plaintiffs because he possessed superior knowledge of the frauds, such that failure to disclose the Loan Fraud and Revenue Fraud would render the February 2021 advance agreement inherently unfair. Knowledge of the Loan Fraud and Revenue Fraud was not readily available to Plaintiffs, as Sanberg engaged in the frauds secretly, and Sanberg knew that Plaintiffs were acting on the basis of mistaken knowledge in agreeing to the February 2021 advance.

147.    Moreover, this omission contradicted statements that Sanberg made and that Plaintiffs relied on in agreeing to the February 2021 advance. In an effort to obtain the February 2021 advance, Sanberg sent Serengeti on February 1, 2021, a PowerPoint deck that characterized the sham LOIs from his Revenue Fraud as: "[m]ultiple contracts signed as of January 2021, contributing high quality recurring revenue." But the since the LOIs represented fake deals, they

were not sources of high quality recurring revenue. That deck also stated that Aspiration had experienced "[e]xplosive growth" and used a "scalable and sustainable business model." This statement was also false, as the Revenue Fraud and Loan Fraud against Investor Fund A had already set in motion Aspiration's downfall.

148.    Sanberg, whether acting individually or through or on behalf of any of the Defendant entities, knew that he had committed the Loan Fraud against Investor Fund A and the Revenue Fraud, but he did not disclose his fraudulent conduct to Plaintiffs despite his duty to do so.

149.    Sanberg's failure to disclose that he had committed the Loan Fraud and Revenue Fraud was intentional, and done for the purpose of obtaining the February 2021 advance.

150.    Plaintiffs justifiably relied on Sanberg's omission regarding having committed the Loan Fraud against Investor Fund A and his omission regarding committing the Revenue Fraud in making the February 2021 advance to Defendants. These omissions were hidden from Plaintiffs and the public. Plaintiffs only learned about them from Sanberg's 2025 criminal case.

151.    As a result of Sanberg's omissions, Plaintiffs agreed to provide Defendants the February 2021 advance of $8,199,456. Plaintiffs would not have made the February 2021 advance to Defendants had Sanberg disclosed to Plaintiffs his Loan Fraud against Investor Fund A and his Revenue Fraud. Plaintiffs do not engage in business with those who commit fraud of any type.

152.    By paying Defendants money that they otherwise would not have but for Sanberg's material omissions, Plaintiffs suffered damages as a direct and proximate cause of Sanberg's fraudulent concealment. With Catona's bankruptcy and heavy indebtedness, the value of the pledged shares are now worthless.

**SEVENTH CLAIM FOR RELIEF**

**(Fraudulent Concealment: Serengeti and Portfolio S Aggregator III LP Against Defendants**

**Sanberg, AGO I LP, AGO I GP, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and**

**AGO Special Situations LP)**

153.    Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

154.    In negotiating and obtaining the advance totaling $5 million from Plaintiffs Serengeti and Portfolio S Aggregator III LP in September 2021, Defendant Sanberg, whether acting individually or through or on behalf of any of Defendant entities AGO I LP, AGO I GP, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situation LP, did not disclose to Plaintiffs that he had committed the Loan Fraud against Investor Fund A and the Revenue Fraud.

155.    Moreover, this omission contradicted statements that Sanberg made and that Plaintiffs relied on in agreeing to the September 2021 advance. Sanberg introduced the idea of the advance to Serengeti on August 27, 2021, by replying to a previous email he had sent Serengeti that contained an update from Aspiration's CEO. Sanberg explained that he was replying to this email so that Serengeti could "refer to the numbers" in the update. That update proclaimed that Aspiration was on its way to becoming "the first ESG-focused consumer financial institution to be a public company." It explained that Aspiration had an "implie[d]" equity value of approximately $2.3 billion. It then linked to a press release, which states that Aspiration "has a revenue run rate in excess of $100 million as of June 2021 and has driven over 7x growth in the past year." These representations were all false.

156.    Sanberg, whether acting individually or through or on behalf of any of the Defendant entities, had a duty to disclose the Loan Fraud and Revenue Fraud to Plaintiffs because he possessed superior knowledge of the frauds, such that failure to disclose the Loan Fraud and Revenue Fraud would render the September 2021 advance agreements inherently unfair. Knowledge of the Loan Fraud and Revenue Fraud was not readily available to Plaintiffs, as Sanberg engaged in the frauds secretly, and Sanberg knew that Plaintiffs were acting on the basis of mistaken knowledge in agreeing to the September 2021 advance.

157.    Sanberg, whether acting individually or through or on behalf of any of the Defendant entities, knew that he had committed the Loan Fraud against Investor Fund A and the Revenue Fraud, but he did not disclose his fraudulent conduct to Plaintiffs despite his duty to do so.

158.    Sanberg's failure to disclose that he had committed the Loan Fraud and Revenue Fraud was intentional, and done for the purpose of obtaining the September 2021 advance.

159.    Plaintiffs justifiably relied on Sanberg's omission regarding having committed the Loan Fraud against Investor Fund A and the Revenue Fraud in making the September 2021 advance to Defendants. These omissions were hidden from Plaintiffs and the public. Plaintiffs only learned about them from Sanberg's 2025 criminal case.

160.    As a result of Sanberg's omissions and misrepresentations, Plaintiffs agreed to provide Defendants the September 2021 advance of $5 million. Plaintiffs would not have made the September 2021 advance to Defendants had Sanberg disclosed to Plaintiffs his Loan Fraud against Investor Fund A and his Revenue Fraud. Plaintiffs do not engage in business with those who commit fraud of any type.

161.    By paying Defendants money that they otherwise would not have but for Sanberg's material omissions, Plaintiffs suffered damages as a direct and proximate cause of Sanberg's fraudulent concealment. With Catona's bankruptcy and heavy indebtedness, the value of the pledged shares are now worthless.

**EIGHTH CLAIM FOR RELIEF**

**(Fraudulent Concealment: Plaintiffs Serengeti, Serengeti Caracal Master Fund, LP, Serengeti Caracal Multi-Series Master LLC—Series EC, and Serengeti Caracal Multi-Series Master LLC—Series AL Against Defendants Sanberg, AGO III LP, and AGO III GP)**

162.    Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

163.    In negotiating and obtaining the advances totaling $2.5 million from Plaintiffs Serengeti, Serengeti Caracal Master Fund, LP, Serengeti Caracal Multi-Series Master LLC—Series EC, and Serengeti Caracal Multi-Series Master LLC—Series AL in October 2021, Defendant Sanberg, whether acting individually or through or on behalf of any of Defendant entities AGO III LP and AGO III GP, did not disclose to Plaintiffs that he had committed the Loan Fraud against Investor Fund A and the Revenue Fraud.

164.    Moreover, this omission contradicted statements that Sanberg made and that Plaintiffs relied on in agreeing to the October 2021 advance. Sanberg introduced the idea of the advance to Serengeti on August 27, 2021, by replying to a previous email he had sent Serengeti that contained an update from Aspiration's CEO. Sanberg explained that he was replying to this email so that Serengeti could "refer to the numbers" in the update. That update proclaimed that Aspiration was on its way to becoming "the first ESG-focused consumer financial institution to

be a public company." It explained that Aspiration had an "implie[d]" equity value of approximately $2.3 billion. It then linked to a press release, which states that Aspiration "has a revenue run rate in excess of $100 million as of June 2021 and has driven over 7x growth in the past year." These representations were all false.

165.    Sanberg, whether acting individually or through or on behalf of any of the Defendant entities, had a duty to disclose the Loan Fraud and Revenue Fraud to Plaintiffs because he possessed superior knowledge of the frauds, such that failure to disclose the Loan Fraud and Revenue Fraud would render the October 2021 advance agreement inherently unfair. Knowledge of the Loan Fraud and Revenue Fraud was not readily available to Plaintiffs, as Sanberg engaged in the frauds secretly, and Sanberg knew that Plaintiffs were acting on the basis of mistaken knowledge in agreeing to the October 2021 advance.

166.    Sanberg, whether acting individually or through or on behalf of any of the Defendant entities, knew that he had committed the Loan Fraud against Investor Fund A and the Revenue Fraud, but he did not disclose his fraudulent conduct to Plaintiffs despite his duty to do so.

167.    Sanberg's failure to disclose that he had committed the Loan Fraud and Revenue Fraud was intentional, and done for the purpose of obtaining the October 2021 advance.

168.    Plaintiffs justifiably relied on Sanberg's omission regarding having committed the Loan Fraud against Investor Fund A and the Revenue Fraud in making the October 2021 advance to Defendants. These omissions were hidden from Plaintiffs and the public. Plaintiffs only learned about them from Sanberg's 2025 criminal case.

169.    As a result of Sanberg's omissions and misrepresentations, Plaintiffs agreed to provide Defendants the October 2021 advance of $2.5 million. Plaintiffs would not have made

the October 2021 advance to Defendants had Sanberg disclosed to Plaintiffs his Loan Fraud against Investor Fund A and his Revenue Fraud. Plaintiffs do not engage in business with those who commit fraud of any type.

170.    By paying Defendants money that they otherwise would not have but for Sanberg's material omissions, Plaintiffs suffered damages as a direct and proximate cause of Sanberg's fraudulent concealment. With Catona's bankruptcy and heavy indebtedness, the value of the pledged shares are now worthless..

NINTH CLAIM FOR RELIEF

(Fraud: Plaintiffs Serengeti and Portfolio S Aggregator II LP Against Defendants Sanberg, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situations LP)

171.    Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

172.    In negotiating and obtaining the advance totaling $4,687,500 from Plaintiffs Serengeti and Portfolio S Aggregator II LP in October 2020, Defendant Sanberg, whether acting individually or through or on behalf of any of Defendant entities AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situation LP, knowingly made false representations to Plaintiffs regarding Aspiration's finances.

173.    To obtain the October 2020 loan, Sanberg sent Serengeti financial information regarding Aspiration on September 3, 2020. One of the documents that he sent on September 3, 2020, claimed that Aspiration had "Total Shareholders Equity" of $52,990,188. But this value was overstated because of the Loan Fraud against Investor A.

174.    Sanberg's misrepresentations were made intentionally and for the purpose of obtaining the October 2020 advance.

175.    Plaintiffs justifiably relied on Sanberg's above-noted financial representations from September 3, 2020, in making the October 2020 advance to Defendants. Plaintiffs did not know that these representations were false in light of Sanberg's hidden Loan Fraud against Investor Fund A.

176.    As a result of Sanberg's misrepresentations, Plaintiffs agreed to provide Defendants the October 2020 advance of $4,687,500. Plaintiffs would not have made the October 2020 advance to Defendants absent Sanberg's misrepresentations.

177.    By paying Defendants money that they otherwise would not have but for Sanberg's knowing and material misrepresentations, Plaintiffs suffered damages as a direct and proximate cause of these misrepresentations. With Catona's bankruptcy and heavy indebtedness, the value of the pledged shares are now worthless.

**TENTH CLAIM FOR RELIEF**

**(Fraud: Serengeti and Portfolio S Aggregator III LP Against Defendants Sanberg, AGO I LP, AGO I GP, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situations LP)**

178.    Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

179.    In negotiating and obtaining the advance totaling $8,199,456 from Plaintiffs Serengeti and Portfolio S Aggregator III LP in February 2021, Defendant Sanberg, whether acting individually or through or on behalf of any of Defendant entities AGO I LP, AGO I GP, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situation LP, knowingly made false representations to Plaintiffs regarding Aspiration's finances.

180.    To obtain the February 2021 advance, Sanberg sent Serengeti on February 1, 2021, a PowerPoint deck that characterized the sham LOIs from his Revenue Fraud as: "[m]ultiple contracts signed as of January 2021, contributing high quality recurring revenue." This was a misrepresentation, because the LOIs represented fake deals, they were not sources of high quality recurring revenue. That deck also stated that Aspiration had experienced "[e]xplosive growth" and used a "scalable and sustainable business model." This statement was also false, as the Revenue Fraud and Loan Fraud against Investor Fund A had already set in motion Aspiration's downfall.

181.    Sanberg's misrepresentations were made intentionally and for the purpose of obtaining the February 2021 advance.

182.    Plaintiffs justifiably relied on Sanberg's above-noted financial representations from February 1, 2021, in making the February 2021 advance to Defendants. Plaintiffs did not know that these representations were false in light of Sanberg's hidden Loan Fraud against Investor Fund A and his hidden Revenue Fraud.

183.    Beyond the misrepresentations identified in this advance, Plaintiffs relied on the misrepresentations involved in the October 202 advance. Defendants never corrected those misrepresentations, and Plaintiffs continued to rely on them for purposes of agreeing to the February 2021 advance. Those misrepresentations are specifically identified in Claim Nine and are incorporated here by reference.

184.    As a result of Sanberg's misrepresentations, Plaintiffs agreed to provide Defendants the February 2021 advance of $8,199,456. Plaintiffs would not have made the February 2021 advance to Defendants absent Sanberg's misrepresentations.

185.     By paying Defendants money that they otherwise would not have but for Sanberg's knowing material misrepresentations, Plaintiffs suffered damages as a direct and proximate cause of these misrepresentations. With Catona's bankruptcy and heavy indebtedness, the value of the pledged shares are now worthless.

## ELEVENTH CLAIM FOR RELIEF

## (Fraud: Serengeti and Portfolio S Aggregator III LP Against Defendants Sanberg, AGO I LP, AGO I GP, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situations LP)

186.     Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

187.     In negotiating and obtaining the advance totaling $5 million from Plaintiffs Serengeti and Portfolio S Aggregator III LP in September 2021, Defendant Sanberg, whether acting individually or through or on behalf of any of Defendant entities AGO I LP, AGO I GP, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situation LP, knowingly made false representations to Plaintiffs regarding Aspiration's finances.

188.     Indeed, Sanberg introduced the idea of the advance to Serengeti on August 27, 2021, by replying to a previous email he had sent Serengeti that contained an update from Aspiration's CEO. Sanberg explained that he was replying to this email so that Serengeti could "refer to the numbers" in the update. That update proclaimed that Aspiration was on its way to the becoming "the first ESG-focused consumer financial institution to be a public company." It explained that Aspiration had an "implie[d]" equity value of approximately $2.3 billion. It then linked to a press release, which states that Aspiration "has a revenue run rate in excess of $100

million as of June 2021 and has driven over 7x growth in the past year." These representations were all false.

189.    Sanberg's misrepresentations were made intentionally and for the purpose of obtaining the September 2021 advance.

190.    Plaintiffs justifiably relied on Sanberg's above-noted financial representations from August 27, 2021, in making the September 2021 advance to Defendants. Plaintiffs did not know that these representations were false in light of Sanberg's hidden Loan Fraud against Investor Fund A and his hidden Revenue Fraud.

191.    Beyond the misrepresentations identified in this advance, Plaintiffs relied on the misrepresentations involved in the October 2020 and February 2021 advances. Defendants never corrected those misrepresentations, and Plaintiffs continued to rely on them for purposes of agreeing to the September 2021 advance. Those misrepresentations are specifically identified in Claims Nine and Ten and are incorporated here by reference.

192.    As a result of Sanberg's misrepresentations, Plaintiffs agreed to provide Defendants the September 2021 advance of $5 million. Plaintiffs would not have made the September 2021 advance to Defendants absent Sanberg's misrepresentations.

193.    By paying Defendants money that they otherwise would not have but for Sanberg's knowing and material misrepresentations, Plaintiffs suffered damages as a direct and proximate cause of these misrepresentations. With Catona's bankruptcy and heavy indebtedness, the value of the pledged shares are now worthless.

**TWELFTH CLAIM FOR RELIEF**

**(Fraud: Plaintiffs Serengeti, Serengeti Caracal Master Fund, LP, Serengeti Caracal Multi-Series Master LLC—Series EC, and Serengeti Caracal Multi-Series Master LLC—Series AL Against Defendants Sanberg, AGO III LP, and AGO III GP)**

194.    Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

195.    In negotiating and obtaining the advance totaling $2.5 million from Plaintiffs Serengeti, Serengeti Caracal Master Fund, LP, Serengeti Caracal Multi-Series Master LLC—Series EC, and Serengeti Caracal Multi-Series Master LLC—Series AL in October 2021, Defendant Sanberg, whether acting individually or through or on behalf of any of Defendant entities AGO III LP and AGO III GP, knowingly made false representations to Plaintiffs regarding Aspiration's finances.

196.    Indeed, Sanberg introduced the idea of the advance to Serengeti on August 27, 2021, by replying to a previous email he had sent Serengeti that contained an update from Aspiration's CEO. Sanberg explained that he was replying to this email so that Serengeti could "refer to the numbers" in the update. That update proclaimed that Aspiration was on its way to becoming "the first ESG-focused consumer financial institution to be a public company." It explained that Aspiration had an "implie[d]" equity value of approximately $2.3 billion. It then linked to a press release, which states that Aspiration "has a revenue run rate in excess of $100 million as of June 2021 and has driven over 7x growth in the past year." These representations were all false.

197.    Sanberg's misrepresentations were made intentionally and for the purpose of obtaining the October 2021 advance.

198.   Plaintiffs justifiably relied on Sanberg's above-noted financial representations from August 27, 2021, in making the October 2021 advance to Defendants. Plaintiffs did not know that these representations were false in light of Sanberg's hidden Loan Fraud against Investor Fund A and his hidden Revenue Fraud.

199.   Beyond the misrepresentations identified in this advance, Plaintiffs relied on the misrepresentations involved in the October 2020 and February 2021 advances. Defendants never corrected those misrepresentations, and Plaintiffs continued to rely on them for purposes of agreeing to the October 2021 advance. Those misrepresentations are specifically identified in Claims Nine and Ten and are incorporated here by reference.

200.   As a result of Sanberg's misrepresentations, Plaintiffs agreed to provide Defendants the October 2021 advance of $2.5 million. Plaintiffs would not have made the October 2021 advance to Defendants absent Sanberg's misrepresentations.

201.   By paying Defendants money that they otherwise would not have but for Sanberg's knowing and material misrepresentations, Plaintiffs suffered damages as a direct and proximate cause of these misrepresentations. With Catona's bankruptcy and heavy indebtedness, the value of the pledged shares are now worthless.

**THIRTEENTH CLAIM FOR RELIEF**

**(Breach of Contract: Plaintiffs Serengeti and Portfolio S Aggregator II LP Against Defendants Sanberg, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situations LP)**

202.   Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

203.    On October 4, 2020, Plaintiffs Serengeti and Portfolio S Aggregator II LP entered into an agreement with Defendants Sanberg, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situation LP, whereby Plaintiffs would advance $4,687,500 to Defendants against 1,454,025 of Sanberg's Aspiration shares held by the aforementioned Defendant Entities. The shares were pledged as collateral for the advance. The parties electronically executed and exchanged the relevant deal documents on October 13, 2020, and Serengeti wired the funds to the Defendant Entities on October 14, 2020.

204.    The October 2020 advance was governed and memorialized by Stock Pledge Agreements, Private Securities Contracts, and a Pledge Waiver. Sanberg signed these agreements on behalf of himself and the Defendant Entities.

205.    The Private Securities Contracts contain provision Section 6(c), which created an ongoing obligation for Defendants to notify Plaintiffs of "any event, development or circumstance of which it has actual knowledge that would reasonably be expected to have a material adverse effect" on the Aspiration shares at issue in the deal.

206.    Plaintiffs adequately performed under the October 2020 advance agreement by wiring Defendants the advance funds agreed upon by the parties.

207.    At no point *after* the October 2020 advance was made, did any Defendant reveal to Plaintiffs that Sanberg committed the Loan Fraud against Clover or Investment Manager 1, Revenue Fraud, or Inflated Assets Fraud. All of these frauds occurred after October 14, 2020. Although Sanberg knew he had committed such fraud, it was not known to the general public or to Plaintiffs.

208.    Pursuant to Section 6(c) of the parties' Private Securities Contracts, Defendants should have disclosed to Plaintiffs that Sanberg had committed the Loan Fraud against Clover

and Investment Manager 1, Revenue Fraud, and Inflated Assets Fraud because such conduct by Sanberg would reasonably be expected to have a material adverse effect on the value, liquidity or marketability of the Aspiration shares pledged as collateral for the advance, or the legality, validity, or enforceability of the parties' agreement or any other related agreement. As such, Defendants breached Section 6(c) the Private Securities Contract.

209.    This breach of Section 6(c) is material, goes to the root of the October 2020 advance, and substantially defeats the purpose of the PSCs and the other contracts signed related to this advance. Specifically, the above-noted frauds were acts that would destroy Aspiration, and with it, the value of the pledged shares in the October 2020 advance.

**FOURTEENTH CLAIM FOR RELIEF**

**(Breach of Contract: Plaintiffs Serengeti and Portfolio S Aggregator III LP Against Defendants Sanberg, AGO I LP, AGO I GP, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situations LP)**

210.    Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

211.    On February 3, 2021, Plaintiffs Serengeti and Portfolio S Aggregator III LP entered into an agreement with Defendants Sanberg, AGO I LP, AGO II GP, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situation LP, whereby Plaintiffs would advance $8,199,456 to Defendants against 2,562,469 of Sanberg's Aspiration shares held by the aforementioned Defendant Entities. The shares were pledged as collateral for the advance. The parties electronically executed and exchanged the relevant deal documents on February 3, 2021, and Serengeti wired the funds to the Defendant Entities on February 5, 2020.

212. The February 2021 advance was governed by and memorialized by a Stock Pledge Agreement, Private Securities Contract, and Pledge Waiver. Sanberg signed these agreements on behalf of himself and the Defendant Entities noted in the previous paragraph.

213. The Private Securities Contract contains provision Section 6(c), which created an ongoing obligation for Defendants to notify Plaintiffs of "any event, development or circumstance of which it has actual knowledge that would reasonably be expected to have a material adverse effect" on the Aspiration shares at issue in this deal.

214. Plaintiffs adequately performed under the February 2021 advance agreement by wiring Defendants the advance funds agreed upon by the parties.

215. At no point *after* the February 2021 advance was made, did any Defendant reveal to Plaintiffs that Sanberg had committed the Loan Fraud against Clover and Investment Manager 1, Revenue Fraud, or Inflated Assets Fraud. The Loan Fraud against Clover and Investment Manager 1 and the Inflated Assets Fraud occurred after February 5, 2021. Regarding the Revenue Fraud, which had begun before this date and continued long afterwards, this claim only alleges that Sanberg's acts in furtherance of the Revenue Fraud after February 5, 2021, were a breach of Section 6(c). Although Sanberg knew he had committed these frauds, it was not known to the general public or Plaintiffs.

216. Pursuant to Section 6(c) of the parties' Private Securities Contract, Defendants should have disclosed to Plaintiffs that Sanberg had committed the Loan Fraud, Inflated Assets Fraud, and the acts that Sanberg committed after February 5, 2021, that were in furtherance of the Revenue Fraud, because such conduct by Sanberg would reasonably be expected to have a material adverse effect on the value, liquidity or marketability of the Aspiration shares pledged as collateral for the advance, or the legality, validity, or enforceability of the parties' agreement

or any other related agreement. As such, Defendants breached Section 6(c) the Private Securities Contract.

217.    This breach of Section 6(c) is material, goes to the root of the February 2021 advance, and substantially defeats the purpose of the PSC and the other contracts signed related to this advance. Specifically, the above-noted frauds were acts that would destroy Aspiration, and with it, the value of the pledged shares in the February 2021 advance.

## FIFTEENTH CLAIM FOR RELIEF

**(Breach of Contract: Plaintiffs Serengeti and Portfolio S Aggregator III LP Against Defendants Sanberg, AGO I LP, AGO I GP, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situations LP)**

218.    Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

219.    On September 23, 2021, Plaintiffs Serengeti and Portfolio S Aggregator III LP entered into an agreement with Defendants Sanberg, AGO I LP, AGO I GP, AGO II LP, AGO II GP, AGO III LP, AGO III GP, and AGO Special Situation LP, whereby Plaintiffs would advance $5 million to AGO III LP against 266,667 shares of Aspiration stock that Sanberg intended to purchase with the advance proceeds. The shares were to be pledged as collateral for the advance. The parties electronically executed and exchanged the relevant deal documents on September 23, 2021, and Serengeti wired the funds to AGO III LP on September 24, 2021.

220.    The September 2021 advance was memorialized and governed by a Stock Pledge Agreement, Private Securities Contract, and Pledge Waiver. Sanberg signed these agreements on behalf of himself and the Defendant Entities noted in the previous paragraph.

221.    Plaintiffs adequately performed under the September 2021 advance agreement by wiring Defendants the advance funds agreed upon by the parties.

222.    The Private Securities Contract contains provision Section 6(c), which created an ongoing obligation for Defendants to notify Plaintiffs of "any event, development or circumstance of which it has actual knowledge that would reasonably be expected to have a material adverse effect" on the Aspiration shares at issue in this deal.

223.    At no point *after* the September 2021 advance was made, did any Defendant reveal to Plaintiffs that Sanberg had committed the Loan Fraud against Clover and Investment Manager A, Revenue Fraud, or Inflated Assets Fraud. The Loan Fraud against Clover and Investment Manager A and the Inflated Assets Fraud occurred after September 24, 2021. Regarding the Revenue Fraud, which had begun before this date and continued long afterwards, this claim only alleges that Sanberg's acts in furtherance of the Revenue Fraud after September 24, 2021, were a breach of Section 6(c). Although Sanberg knew he had committed these frauds, it was not known to the general public or Plaintiffs.

224.    Pursuant to Section 6(c) of the parties' Private Securities Contracts, Defendants should have disclosed to Plaintiffs that Sanberg had committed the Loan Fraud against Clover and Investment Manager 1, Inflated Assets Fraud, and the acts that Sanberg committed after September 24, 2021, that were in furtherance of the Revenue Fraud, because such conduct by Sanberg would reasonably be expected to have a material adverse effect on the value, liquidity or marketability of the Aspiration shares pledged as collateral for the advance, or the legality, validity, or enforceability of the parties' agreement or any other related agreement. As such, Defendants breached Section 6(c) the Private Securities Contract.

225.    This breach of Section 6(c) is material, goes to the root of the September 2021 advance, and substantially defeats the purpose of the PSC and the other contracts signed related to this advance. Specifically, the above-noted frauds were acts that would destroy Aspiration, and with it, the value of the pledged shares in the September 2021 advance

### SIXTEENTH CLAIM FOR RELIEF

### (Breach of Contract: Plaintiffs Serengeti, Serengeti Caracal Master Fund, LP, Serengeti Caracal Multi-Series Master LLC—Series EC, and Serengeti Caracal Multi-Series Master LLC—Series AL Against Defendants Sanberg, AGO III LP, and AGO III GP)

226.    Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

227.    On or about October 1, 2021, Plaintiffs Serengeti, Serengeti Caracal Master Fund, LP, Serengeti Caracal Multi-Series Master LLC—Series EC, and Serengeti Caracal Multi-Series Master LLC—Series AL entered into an agreement with Defendants Sanberg, AGO III LP, and AGO III GP, whereby Plaintiffs would advance $2.5 million to AGO III LP against 133,333 Aspiration shares that Sanberg planned to purchase with the advance proceeds. The shares were to be pledged as collateral for the advance. The parties electronically executed and exchanged the relevant deal documents on October 1, 2021, and the funds were wired the same day.

228.    The October 2021 advance was memorialized and governed by a Stock Pledge Agreement, Private Securities Contract, and Pledge Waiver. Sanberg signed these agreements on behalf of himself and the Defendant Entities.

229.    The Private Securities Contract contains provisions Section 6(c), which created an ongoing obligation for Defendants to notify Plaintiffs of "any event, development or

circumstance of which it has actual knowledge that would reasonably be expected to have a material adverse effect" on the Aspiration shares at issue in this deal.

230.    Plaintiffs adequately performed under the October 2021 advance agreement by wiring Defendants the advance funds agreed upon by the parties.

231.    At no point *after* the October 2021 advance was made, did any Defendant reveal to Plaintiffs that Sanberg had committed the Loan Fraud against Clover and Investment Manager 1, Revenue Fraud, or Inflated Assets Fraud. The Loan Fraud against Clover and Investment Manager 1 and the Inflated Assets Fraud occurred after October 1, 2021. Regarding the Revenue Fraud, which had begun before this date and continued long afterwards, this claim only alleges that Sanberg's acts in furtherance of the Revenue Fraud after October 1, 2021, were a breach of Section 6(c). Although Sanberg knew he had committed these frauds, it was not known to the general public or Plaintiffs.

232.    Pursuant to Section 6(c) of the parties' Private Securities Contract, Defendants should have disclosed to Plaintiffs that Sanberg had committed the Loan Fraud, Inflated Assets Fraud, and the acts that Sanberg committed after October 1, 2021, that were in furtherance of the Revenue Fraud, because such conduct by Sanberg would reasonably be expected to have a material adverse effect on the value, liquidity or marketability of the Aspiration shares pledged as collateral for the advance, or the legality, validity, or enforceability of the parties' agreement or any other related agreement. As such, Defendants breached Section 6(c) the Private Securities Contract.

233.    This breach of Section 6(c) is material, goes to the root of the October 2021 advance, and substantially defeats the purpose of the PSC and the other contracts signed related

to this advance. Specifically, the above-noted frauds were acts that would destroy Aspiration, and with it, the value of the pledged shares in the October 2021 advance.

## SEVENTEENTH CLAIM FOR RELIEF

### (Unjust Enrichment: All Plaintiffs Against All Defendants)

234.    Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

235.    Defendants received and continue to receive benefits conferred on them because of the wrongful conduct alleged above, including through having collectively received over $20 million from Plaintiffs over the course of the four deals outlined above.

236.    Defendants received those benefits under circumstances such that it would be against equity and good conscience to permit Defendants to retain them, including that they misrepresented material facts about Aspiration's value and omitted material facts regarding Aspiration's value that contradicted material representations that they had made about Asportation's value. Had Plaintiffs not made these misrepresentations or omissions, Defendants would have known that Aspiration was worth far less than it appeared and that Defendants had led Plaintiffs to believe.

237.    Plaintiffs incurred substantial costs in providing benefits to Defendants. As detailed above, Plaintiffs lost over $20 million because of the four deals that they made to obtain Defendants' now worthless Aspiration stock.

238.    Plaintiffs are entitled to damages equal to the amount of Defendants' unjust enrichment, and Plaintiffs' costs and attorneys' fees.

## EIGHTEENTH CLAIM FOR RELIEF

### (Conversion: All Plaintiffs Against All Defendants)

239.    Plaintiffs incorporate by reference in their entirety the preceding paragraphs of this Complaint, as if fully set forth herein.

240.    Defendants have and are continuing to exercise unlawful and unauthorized dominion over specifically identifiable assets of Plaintiffs, namely over $20 million in funds from the four advances discussed above that Plaintiffs paid to Defendants.

241.    This dominion has been unlawful and unauthorized from the outset of having received these funds. As alleged above, Defendants came into these funds by misrepresenting material facts about Aspiration's value and omitting material facts regarding Aspiration's value that contradicted material representations that they had made about Asportation's value. Had any of these misrepresentations or omissions not occurred, Plaintiffs never would have given their money to Defendants.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon the foregoing allegations and averments, Plaintiffs pray that this Court enter judgment in Plaintiffs' favor and against Defendants as follows:

A.    All Damages, including compensatory and punitive, in an amount to be determined at trial.

B.    For prejudgment interest thereon.

C.    Rescission of all relevant agreements between the parties.

D.    An award of attorneys' fees and costs, pursuant to Section 21 of the Private Securities Contracts entered into by the parties.

E.    Such other and further relief as this Court deems just and appropriate.

DATED:   New York, New York
         December 18, 2025

ELMAN FREIBERG PLLC


By: _S/ Howard I. Elman_____
Howard I Elman (HE7014)
  helman@ef-law.com
Yosef Rothstein (YR5268)
  yrothstein@ef-law.com
Elman Freiberg PLLC
950 Third Avenue, Suite 1600
New York, NY 10022
(646) 780-8100

BIRD, MARELLA, RHOW,
   LINCENBERG, DROOKS &
   NESSIM, LLP
Ariel A. Neuman (*pro hac vice* application
forthcoming)
  aneuman@birdmarella.com
Gregory T. Nolan (*pro hac vice* application
forthcoming)
  gnolan@birdmarella.com
1875 Century Park, E, 23rd Floor
Los Angeles, California 90067
(310) 201-2100

Attorneys for Plaintiffs Serengeti Asset
   Management LP; Portfolio S
   Aggregator II LP; Portfolio S
   Aggregator III LP; Serengeti Caracal
   Master Fund, LP; Serengeti Caracal
   Multi-Series Master LLC—Series EC;
   and Serengeti Caracal Multi-Series
   Master LLC—Series AL